# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

GEORGE SELL,

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.

Civil Action No. 13-285
Criminal Action No. 10-528

## MEMORANDUM OPINION

Pending before the Court are Petitioner's (1) Motion To Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Motion to Vacate") and (2) Supplement to Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Supplement"). The Court has carefully reviewed the record in connection with these Motions. For the following reasons, the Court **DENIES** said Motions.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Based on his participation in a Web-based bulletin board that offered child pornography ("Country Lounge"), on August 30, 2010, Petitioner was indicted for one count of Conspiracy to Advertise Child Pornography in violation of 18 U.S.C. § 2251(e), one count of Conspiracy to Transport Child Pornography in violation of 18 U.S.C. § 2252(b)(1), seven counts of Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2), and one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Doc. No. 1. In September 2011, Petitioner executed a plea agreement ("Agreement") and Statement of Facts ("Attachment A"). Doc. Nos. 32, 32-1. In the Agreement, Petitioner agreed to plead guilty to Count II of the

1

Indictment, namely, one count of Conspiracy to Transport Child Pornography in violation of 18 U.S.C. § 2252(a)(1) and (b)(1).

According to Attachment A, from December 2006 to August 2008, Petitioner and others conspired to operate County Lounge, which was a secure website through which people traded images of child pornography. Petitioner was the "Root Administrator" and "day-to-day manager" of Country Lounge. Members of Country Lounge would primarily post non-child pornographic images that could be viewed on the board itself as preview images, with accompanying hyperlinks to the actual child pornographic content they wanted to share. Although one of County Lounge's purported rules stated that members should neither post links to nor request child pornography as defined under U.S. law and that members who violated this rule would be banned, the main purpose of Country Lounge was to facilitate the trading of images of child pornography and all members were expected to actively post new child pornographic material.

In August 2008 or thereabouts, law enforcement officials seized County Lounge and a forensic examination of it was performed. Based on the examination, the officials accessed between 10 and 150 images of child pornography from links that remained active at the time of seizure. In November 2009, agents from the Department of Homeland Security Immigration and Customs Enforcement executed a search warrant on the Petitioner's residence and removed three hard drives. A forensic examination of these items revealed that they contained approximately 150 images of child pornography. All of these images involved prepubescent minor girls engaged in the lascivious exhibition of the genitals or pubic area.

On or about January 26, 2012, the Court adjudged Petitioner guilty of Count II (Conspiracy to Transport Child Pornography) and sentenced him to, inter alia, 120 months in prison. Doc. No. 42. Approximately one year later, Petitioner filed a Motion to Vacate, Set

Aside, or Correct Sentence Pursuant to 28 U.S.C. §2255 and an accompanying 56-page memorandum in support ("Motion to Vacate"). *See* Doc. No. 56. Mindful of its obligation to construe pro se filings liberally, the Court has gleaned the following material arguments from Petitioner's somewhat disjointed Motion to Vacate:

    i. Petitioner's counsel failed to communicate with him and failed to obtain certain evidence from the United States, such as a digital database of the website showing its entire content;

    ii. The United States committed a *Brady* violation by failing to turn over a Country Lounge forum titled "Humiliation Nation," which Petitioner alleges would have shown that the purported rule against child pornography was vigorously enforced;

    iii. Had the United States turned over exculpatory evidence and Petitioner's counsel done his due diligence, the evidence would have shown that the United States could not have proved the elements of the offense;

    iv. Although Country Lounge contained links to Russian females under 18, these links were images to "child erotica," and the DOJ stated in 2000 and 2002 that child erotica did not constitute child pornography;

    v. The Indictment was based on information obtained in violation of Petitioner's Fourth Amendment right to be free from unreasonable searches and seizures;

    vi. The United States should have turned over the affidavit of a coconspirator that was used to indict Petitioner, and Petitioner's counsel should have made greater efforts to acquire this document; this affidavit would have shown that the coconspirator was biased against Petitioner, presumably because he was seeking to forge a cooperation deal with prosecutors;

vii. The United States deliberately overcharged Petitioner and publicly disseminated embarrassing information to coerce him to plead guilty, and Petitioner's counsel aided these efforts as opposed to vigorously defending him;

viii. The Presentencing Investigation Report did not contain enough information about Petitioner's background (e.g., educational attainment and community participation) for the Court to make an informed decision regarding sentence length.

*See generally* Doc. No. 56.

The United States filed its Response on May 29, 2013. Doc. No. 22. Predictably, the United States vigorously opposed Petitioner's Motion to Vacate. To support its Response, the United States generally notes that Petitioner pleaded guilty and, in so doing, agreed that the allegations in the Agreement and Attachment A were true and that he was fully satisfied with the representation of his attorney. The United States further argues that the alleged *Brady* violations do not implicate *Brady* because Petitioner had actual knowledge of the material he sought to discover and because federal law precluded it from giving him or his attorney child pornography. The United States adds that Petitioner waived some of his claims because he did not pursue them on direct appeal.

In reply, Petitioner filed a document he titled "Supplement to Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Supplement"). *See* Doc. No. 54-1. The United States has filed no formal opposition to Petitioner's Supplement. Moreover, it is in the nature of a reply. Therefore, the Court treats the Supplement as both a supplemental motion to vacate and reply brief. In his Supplement, Petitioner purports to abandon his *Brady* claims, citing a letter from the United States stating that Petitioner's counsel was free to inspect the items Petitioner sought to discover. *See* Doc. No. 54-2. However, Petitioner argues that this letter

buttresses his contention that his counsel performed deficiently by failing to inspect relevant evidence to gauge the strength, or lack thereof, of the Government's case. Although Petitioner's Supplement largely duplicates his Motion to Vacate, Petitioner arguably raises a handful of new or supplemental arguments therein. They include, and appear to be limited to, the following:

ix. The United States violated the Agreement by not returning certain evidence after Petitioner pleaded guilty;

x. The website itself did not contain any pornographic images;

xi. Petitioner would not have pleaded guilty had his counsel inspected the evidence in the United States' possession because it would have shown that he was not guilty;

Petitioner concludes his Supplement by requesting an evidentiary hearing and a certificate of appealability. Doc. No. 54-1 at 31.

## II. ARGUMENT

The Court reviews Petitioner's claims of ineffective assistance of counsel under the familiar two-prong standard enunciated in *Strickland v. Washington*. To establish a claim of ineffective assistance of counsel, Petitioner must show that his attorney's performance was deficient and that it prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficiency, Petitioner must show that his attorney's performance and representation "fell below an objective standard of reasonableness" as measured by prevailing professional norms. *See id.* at 688. Second, Petitioner must demonstrate that his attorney's deficient performance prejudiced him. *Id.* at 687. To satisfy this standard, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* standard also contemplates courts' indulging a "strong presumption that counsel's conduct falls within the wide range of

5

reasonable professional assistance." *See id.* at 689; *see also Premo v. Moore*, 131 S. Ct. 733, 739–40 (2011) (citations and internal quotation marks omitted) ("Surmounting *Strickland*'s high bar is never an easy task. . . . The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.").

The *Strickland* test is slightly modified in the context of guilty pleas. Although the first prong is essentially the same, "[t]he second, or 'prejudice,' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985). "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* "Hindsight and second guesses are also inappropriate, and often more so, where a plea has been entered without a full trial . . . ." *Premo*, 131 S. Ct. at 745. Thus, in such cases, "[t]here is a most substantial burden on the claimant to show ineffective assistance." *Id.*

Consistent with these limiting principles, when evaluating post-guilty plea claims of ineffective assistance, defendants are usually bound to statements made under oath during a plea colloquy. *Fields v. Att'y Gen. State of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992). "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 222 (2005).

In this case, Petitioner has not shown that his counsel's performance was deficient. In executing the Agreement, Petitioner represented that he "voluntarily agree[d]" to the entire

6

agreement and did "not wish to change any part of it." Doc. No. 32 at 9. Petitioner further certified that he was "completely satisfied with the representation of [his] attorney." *Id.* Consistent with these representations, Petitioner stated during his Rule 11 colloquy that he agreed with the factual averments in the Agreement and Attachment A and had no complaints about his counsel's representation of him. *See* Doc. No. 50-2 at 10, 17. Yet Petitioner predicates most of his claims of ineffective assistance of counsel on factual assertions that contradict the Agreement, Attachment A, and his sworn statements made during the Rule 11 hearing. However, Petitioner has failed to show extraordinary circumstances that would provide a basis for disbelieving these representations. Additionally, it is difficult to determine whether Petitioner would have gone to trial absent his attorney's alleged errors, and freely second-guessing plea agreements based on vague allegations contradicting sworn statements stands to inject a heavy dose of uncertainty into the ubiquitous plea bargaining process. *Cf. Missouri v. Frye*, 132 S. Ct. 1399, 1407 (2012) (stating that "[n]inety-seven percent of federal convictions . . . are the result of guilty pleas"). Accordingly, to the extent Petitioner's requests for relief contradict the aforesaid declarations, they fail as a matter of law.

Notwithstanding this analysis, the Court proceeds to address Petitioner's main arguments one by one. This mechanical approach reflects the disjointed nature of Petitioner's Motion to Vacate and Supplement.

Petitioner first argues that counsel failed to communicate with him and failed to obtain certain evidence from the United States, such as a digital database of the website showing its entire content. Petitioner's claim that his attorney failed to communicate with him contradicts his sworn statements that he was fully satisfied with his attorney's representation. This argument also fails because Petitioner has not adequately shown that he would not have pleaded guilty and

7

would have gone to trial had his attorney communicated with him more. Petitioner was facing serious exposure due to the 10-count Indictment and swore, inter alia, that he operated a website involving child pornography.

The assertion that Petitioner's counsel failed to obtain evidence necessary to his defense is also unpersuasive. Petitioner swore that he operated a website offering child pornography and that his own hardware contained child pornography; it is unclear how possessing and/or inspecting this evidence would have helped his case. At any rate, as he concedes, Petitioner had actual knowledge of the evidence at issue because he operated the website. Therefore, counsel's alleged failure to obtain and/or inspect this evidence was nonprejudicial. *Cf. Fullwood v. Lee*, 290 F.3d 663, 686 (4th Cir. 2002) (citation omitted) ("[I]nformation that is not merely available to the defendant but is actually known by the defendant would fall outside of the *Brady* rule."). Furthermore, Petitioner's counsel was not allowed to actually obtain the evidence from the prosecution because "[i]n any criminal proceeding, any property or material that constitutes child pornography . . . shall remain in the care, custody, and control of either the Government or the court. . . . so long as the Government makes the property or material reasonably available to the defendant." 18 U.S.C. § 3509(m)(1), (2)(A). Such material is reasonably available where "the Government provides ample opportunity for inspection, viewing, and examination at a Government facility . . . ." *Id.* § 3509(2)(B). As the Government made the evidence at issue available for inspection, the Government complied with this statute. For these reasons, Petitioner's first argument fails.

Petitioner's second argument is likewise deficient. Petitioner asserts that the Government committed a *Brady* violation by failing to turn over a Country Lounge forum titled "Humiliation Nation," which allegedly would have shown that the purported rule against child pornography

was vigorously enforced. For one thing, this argument fails because Petitioner has conceded that there was no *Brady* violation. Furthermore, as indicated in his lengthy memoranda, Petitioner had actual knowledge of the content at issue. Additionally, the assertion that this forum would have shown that the purported rule against child pornography was vigorously enforced directly contradicts sworn statements Petitioner made in the Agreement and at the Rule 11 hearing. Attachment A, which Petitioner swore was an accurate statement of facts, clearly states that, despite the purported rule against child pornography, the fundamental purpose of the website was to share child pornography. Besides, Petitioner further stated in Attachment A that there were images of child pornography on his personal computer equipment. For these reasons, Petitioner's second argument fails.

Petitioner's third argument lacks merit. Petitioner asserts that the United States would not have managed to prove the elements of the offense had it turned over the allegedly exculpatory evidence. However, the United States had no duty to turn over such evidence and was barred from doing so by statute. In any event, Petitioner swore that he was guilty of the offense charged and that the United States would have been able to prove all the elements of the offense beyond a reasonable doubt had the case gone to trial. Doc. No. 32 at 1, 3. Likewise, Petitioner swore that he operated a website offering child pornography and that he kept computer equipment containing images of child pornography. Therefore, there is no indication that the United States could not have proved the charged offense. This argument seems to be a backdoor way of relitigating the merits of the dispute. However, Petitioner waived his right of appeal in the Agreement, Doc. No. 32 at 7, and there is no indication that he is "actually innocent" or that there is "cause" for the default and "prejudice" therefrom. *Cf. United States v. Fugit*, 703 F.3d

248, 253–54 (4th Cir. 2012) (citation and internal quotation marks omitted). Accordingly, Petitioner's third argument fails.

Petitioner's fourth argument is meritless. Although Petitioner asserts that the links on County Lounge led to "child erotica," not child pornography, these allegations contradict his sworn statements in the Agreement, Attachment A, and Rule 11 colloquy. Furthermore, even if the links did not involve child pornography as defined under federal law, Petitioner still swore that there were images of child pornography on the equipment seized from his residence. More broadly, these allegations are also inconsistent with Petitioner's declarations that the prosecution would have been able to prove all the elements of the offense had the case proceeded to trial. Finally, Petitioner's assertion that the DOJ mislead him is too vague and unsupported to support relief from his sentence. For these reasons, Petitioner's fourth argument fails.

Petitioner's fifth argument appears to be that the Indictment was based on information obtained in violation of Petitioner's Fourth Amendment right to be free from unreasonable searches and seizures. Apparently, Petitioner argues that the United States lacked probable cause to search his residence and seize his hard drives. The salient flaw in this argument is that the allegedly unlawful search and seizure of the evidence in question would not affect the validity of the indictment, even though the evidence may not be admissible at trial. *See United States v. Calandra*, 414 U.S. 338, 351–52 (1974). Furthermore, as explained above, this argument is waived. For good measure, Petitioner agreed that the United States would have been able to prove the offense charged at trial. Accordingly, Petitioner's fifth argument fails.

Petitioner's sixth argument is not a model of clarity. Petitioner seems to assert that the United States should have turned over the affidavit of a coconspirator that was used to indict Petitioner and Petitioner's counsel should have made greater efforts to acquire this document

because it would have shown that the coconspirator was biased against Petitioner. One flaw in this argument is that the affidavit is not evidence; therefore, the prosecution had no obligation to turn it over. *See generally Brady v. Maryland*, 373 U.S. 83 (1963). The argument that Petitioner's counsel should have done more to obtain the document fails because it contradicts Petitioner's sworn declaration that he was fully satisfied with counsel's performance and had no complaints about it. Similarly, the argument fails because Petitioner stipulated that the prosecution would have been able to prove the charged offense. That is, even had the alleged witness been biased against Petitioner, it does not follow, as Petitioner recognized in pleading guilty, that the United States could not have proved its case. Additionally, the alleged witness's bias against Petitioner would not have impacted the validity of the indictment. *See generally Calandra*, *supra*. Finally, the Government asserts, and Petitioner's vague allegations do not indicate otherwise, that it was prepared to timely produce any Jencks Act or *Giglio* material. *See* Doc. No. 50 at 12 (citations omitted). For these reasons, Petitioner's sixth argument fails.

Petitioner's seventh argument is that the United States deliberately overcharged him and publicly announced his arrest to coerce him into pleading guilty, and that his counsel aided these efforts rather than vigorously defending him. However, this argument appears to be waived because Petitioner failed to raise it below. Assuming that it were not waived, the Indictment does not reflect, and Petitioner has given the Court no reason to believe, that he was a victim of "multiplicity," which is "is the charging of a single offense in several counts." *United States v. Mason*, 532 F. App'x 432, 436 (4th Cir. 2013) (citation and internal quotation marks omitted). Here, Petitioner was indicted for one count of Conspiracy to Advertise Child Pornography in violation of 18 U.S.C. § 2251(e), one count of Conspiracy to Transport Child Pornography in violation of 18 U.S.C. § 2252(b)(1), seven counts of Receipt of Child Pornography in violation

of 18 U.S.C. § 2252(a)(2), and one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B). In addition to being charged for the receipt, possession, transport, and advertisement of child pornography based on separate statutory prohibitions, the conduct took place over a course of nearly two years and involved specific files and/or data, including around 150 pornographic images. Accordingly, Petitioner has not carried the burden of showing multiplicity. *See id.*; *see also United States v. Adams*, No. 06-30033, 2006 WL 2850510, at *3 (C.D. Ill. Oct. 2, 2006). Furthermore, to the extent Petitioner takes umbrage with the punitiveness or prevalence of federal laws against child pornography, it bears emphasis that "the legislature . . . has primary responsibility for making the difficult policy choices that underlie any criminal sentencing scheme." *Ewing v. California*, 538 U.S. 11, 28 (2003). It also bears mentioning that prosecutors generally enjoy broad discretion in terms of charging decisions. *See Nunes v. Ramirez-Palmer*, 485 F.3d 432, 441 (9th Cir. 2007) (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). Although Petitioner faults his counsel for not challenging his alleged overcharging, his sworn statements expressing satisfaction with counsel's performance contradict this allegation. And the notion that the alleged publicizing of his arrest prejudiced him fails for various reasons. *Cf. Buckley v. Fitzsimmons*, 509 U.S. 259, 276–78 (1993) (holding that statements that prosecutors make at post-indictment news conferences are protected by qualified immunity); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980). For these reasons, Petitioner's seventh argument fails.

Petitioner's eighth argument is unavailing. Petitioner contends that the Presentencing Investigation Report (PSR) did not contain enough information about Petitioner's background for the Court to make an informed decision regarding sentence length. Assuming this assertion is true, Petitioner's attorney submitted a letter in anticipation of Petitioner's sentencing that

contained much of the same information, including Petitioner's age, educational level, criminal history (or lack thereof), financial position, and other information. *See* Doc. No. 35. Moreover, the Guidelines called for a sentence of 108 – 135 months and the Court sentenced Petitioner in the middle of this range. Accordingly, assuming the PSR were deficient in the way described and said letter failed to cure it, Petitioner has still failed to show prejudice.

Petitioner's ninth argument lacks merit. Petitioner argues that the United States violated the Agreement by not returning certain evidence after Petitioner pleaded guilty. The salient flaw in this argument is that the United States may not turn over the evidence at issue because it contains child pornography. Furthermore, the Agreement contains a provision for the forfeiture of the items that Petitioner asserts have been improperly withheld, including the hard drives at issue. *See* Doc. No. 32 at 5–6. Ultimately, the United States did not seek official forfeiture of the items at issue because Petitioner voluntarily abandoned them. *See* Doc. No. 50-5 at 1; Doc. No. 50-3 at 16.[1] Therefore, Petitioner's ninth argument fails.

Petitioner's tenth argument is a variation of earlier arguments. Petitioner states that Country Lounge did not itself contain pornographic images, but only linked to images of girls that Petitioner did not deem to be pornographic. This argument fails for the reasons stated above, including Petitioner's contrary sworn declarations.

Petitioner's eleventh, and final, argument is that he would not have pleaded guilty had his counsel inspected the evidence in the United States' possession because it would have shown that he was not guilty. Again, this argument is a variant of arguments that the Court has already considered and rejected, and it fails for the same reasons.

---

[1] Evidently, Petitioner refused to abandon one hard drive. The United States has asserted that it does not believe that this device contains contraband. Therefore, absent a showing that doing so would be improper, the Court requests the United States to initiate efforts to return this item to Petitioner.

Additionally, Petitioner has requested an evidentiary hearing in conjunction with his Motion to Vacate. The decision whether to hold an evidentiary hearing in connection with a § 2255 motion to vacate is "generally left to the sound discretion of the district judge . . . ." *United States v. Wright*, No. 12–7468, 2013 WL 4258360, at *1 (4th Cir. Aug. 12, 2013); *see also Conaway v. Polk*, 453 F.3d 567, 582 (4th Cir. 2006). "An evidentiary hearing in open court is required when a movant presents a colorable . . . claim showing disputed facts beyond the record or when a credibility determination is necessary in order to resolve the issue." *United States v. Pender*, 514 F. App'x 359, 360 (4th Cir. 2013) (citing *United States v. Witherspoon*, 231 F.3d 923, 926–27 (4th Cir. 2000)). Here, Petitioner has shown no material disputed facts outside of the record. Nor is a credibility determination necessary to resolve his Motion to Vacate. Accordingly, the Court denies Petitioner's request for a hearing.

### III. CONCLUSION

The Court has left no stone unturned in scouring Petitioner's lengthy memoranda in search of any conceivable basis for relief. Understandably, the Government has vociferously opposed any consideration of the merits of any of Petitioner's multitudinous claims. The Court has carefully considered each of the arguments that Petitioner makes in each of his lengthy memoranda and has found no signs of irregularity. Regrettably, although Petitioner vehemently insists that he was a victim of overzealous prosecution and railroaded into pleading guilty, the record clearly reflects that Petitioner voluntarily and willfully swore that he participated in the lascivious activity underlying the child pornography offense. Thus, while a ten-year sentence is generally no laughing matter, there is simply no legal foundation on which to furnish Petitioner the requested relief. At the end of the day, it is what it is.

**IV. CERTIFICATE OF APPEALABILITY**

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). To meet this burden, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," or that "the issues presented are adequate to deserve encouragement to proceed further." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citations and internal quotation marks omitted). Petitioner has raised no arguments that cause this Court to view the issues as debatable, find that the issues could have been resolved differently, or conclude that the issues raise questions that warrant further review. Accordingly, the Court denies a Certificate of Appealability.

| December 31, 2013 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |